ALFRED S. LOCKLING, administrator, *vs.* ARTHUR H. WISWELL.

Suffolk.     January 3, 1945. — May 2, 1945.

Present: FIELD, C.J., LUMMUS, QUA, WILKINS, & SPALDING, JJ.

*Negligence*, Motor vehicle, Causing death, Violation of law. *Proximate Cause. Motor Vehicle*, Equipment.

Evidence that one, operating an automobile at night at a speed at which he could stop in about eighteen inches, not recognizing that an object, which he saw lying in the road not more than fifteen to twenty feet ahead of him, was a boy who had been struck by another automobile,

but thinking that it was a bundle of rags, ran over and killed the boy, warranted a finding of negligence of the operator either in failing to stop or in not turning aside to avoid striking the object.

At the trial of an action based on negligence of the defendant, operator of an automobile, in running over and killing a boy lying in the road at night after he had been knocked down by the first of several automobiles travelling ahead of the defendant's automobile, it was error prejudicial to the defendant to submit to the jury the issue whether any violation by him of a regulation of the registrar of motor vehicles prescribing the distance which his headlights should throw light ahead was a proximate cause of the boy's death, where it appeared that the headlights were sufficient to "pick up an object in the road" in the space between the defendant's automobile and the automobile immediately ahead of it, and there was no evidence that he saw or could have seen the boy before the boy appeared in that space.

TORT. Writ in the Municipal Court of the Dorchester District dated April 11, 1942.

On removal to the Superior Court, the case was tried before *Dowd, J.*

*H. S. Avery,* for the defendant.

*T. H. Mahony,* (*H. L. Rose* with him,) for the plaintiff.

SPALDING, J. The plaintiff, as administrator of the estate of Charles Lockling, brought this action to recover damages for the death [1] of his intestate. The jury returned a verdict for the plaintiff, and the case comes here on the defendant's exceptions to the denial of a motion for a directed verdict, to the admission of certain evidence, and to a portion of the judge's charge.

The evidence in its aspect most favorable to the plaintiff was as follows: On June 28, 1941, at about 9:15 P.M., the defendant was driving his automobile in the direction of Neponset on the Old Colony Parkway in South Boston at a speed of about ten to twelve miles per hour. At that speed the defendant could "stop his car in about eighteen inches." There were three automobiles ahead of him travelling in the same direction — the nearest one being about fifteen to twenty feet ahead. The weather was clear and the road was dry. The headlights of the defendant's automobile were "lighted on low beam . . . [and] showed on

---

[1] At the close of the evidence the plaintiff discontinued the count for conscious suffering.

the car ahead"; "they would pick up an object in the road about fifty or sixty feet ahead." Observing that the automobile ahead of him had stopped, the defendant brought his to a stop. When stopped, the defendant's automobile was about a foot from the curb on the west side of the street. At about that time the defendant heard the "yelling of a boy or woman" and saw people running to the rear of his automobile; he got out and observed a little boy (the plaintiff's intestate, who will be hereinafter referred to as the deceased) "under the trunk at the rear of the car." The deceased's "feet were to the left diagonally as . . . [the] car was travelling" and his head was to the right and was back about eighteen inches from the right rear wheel. Blood was observed on the right side of the hood, the right front mudguard, and the right rear hub cap of the defendant's automobile. On conflicting evidence it could have been found that the defendant admitted seeing "what he thought was a bundle of rags on the road" and that he ran over it with the right front and right rear wheels of his automobile.

The only eyewitness to the accident testified, in substance, that while she was standing on the east side of the street she observed the deceased there; that she next saw him lying in the gutter on the west side; that just before she saw him she heard an "awful noise" and observed an automobile which came almost to a full stop; that the driver of this automobile "looked out the window and heard . . . [a] boy screaming and . . . pulled away and went down the road very fast"; that another automobile followed but "pulled out from him"; that the position of the deceased's body had changed since she first noticed it; that a third automobile (the defendant's) came along and she "ran out in the middle of the road and started to holler for him to stop"; that before it stopped the right rear wheel passed over the deceased's head; and that when she arrived at the scene she saw "rivulets of blood" coming from his head.

There was medical evidence that death of the deceased was caused by a fractured skull and crushed chest. There

was also evidence that the deceased was alive prior to being run over by the defendant's automobile.

While the evidence of negligence of the defendant was slight, we think that the judge did not err in submitting the case to the jury. The defendant, whose automobile was only fifteen to twenty feet behind the automobile immediately ahead, had very little opportunity to observe the deceased who had already been knocked down and was lying on the ground. Yet there was evidence that he saw something on the road but concluded that it was a "bundle of rags." The jury might have found that the defendant was negligent either in failing to stop or in not turning to the left to avoid striking the object. *Birch* v. *Strout,* 303 Mass. 28, 30. *Shea* v. *Butler,* 315 Mass. 523, 526. The case is close, but we think it may be distinguished from cases like *Abrahams* v. *Rice,* 306 Mass. 24, *Conte* v. *Mizzoni,* 298 Mass. 463, and *Lovett* v. *Scott,* 232 Mass. 541, relied on by the defendant. In those cases the plaintiff suddenly appeared in the path of the defendant's automobile and there was no opportunity to avoid the collision.

We think that it could have been found on the evidence that the deceased's death was caused by the defendant's automobile. The jury could have found that the first automobile knocked the deceased down but did not pass over him; that the deceased was alive before the defendant's automobile ran over him; and that the cause of death was the fractured skull and crushed chest which were inflicted by the defendant's automobile. The case in this respect differs from *Cormier* v. *Bodkin,* 300 Mass. 357, 361–362, and is within the principles established in *Conley* v. *Morash,* 307 Mass. 430, 432–433, *Sargent* v. *Massachusetts Accident Co.* 307 Mass. 246, 250–251, and *Rocha* v. *Alber,* 302 Mass. 155, 157, 158.

The plaintiff offered in evidence, subject to the objection and exception of the defendant, § 1 of the rules and regulations of the registrar of motor vehicles concerning headlamps on motor vehicles, adopted pursuant to G. L. (Ter. ed.) c. 90, § 31, the material portions of which are as follows: "If and when during the period when motor vehicles

are required to display lights by section 7 of chapter 90 of the General Laws . . . there is not sufficient light within the traveled portion of the highway to make clearly visible all vehicles, persons or substantial objects within a distance of at least 160 feet, no automobile shall be operated unless it is equipped with two lighted headlamps of approximately equal candle power which shall throw sufficient light ahead to make clearly visible all vehicles, persons or substantial objects upon the roadway within a distance of 160 feet." It does not appear at what stage of the trial this was offered, and we cannot say that the judge erred in admitting it. Conceivably it might have become material with respect to some evidence that might be introduced.

But after all the evidence was in, it was apparent that a violation of this regulation, if there was one, could have had no bearing on the issues before the jury, and we think that the manner in which the judge dealt with it in his charge constituted error. The judge charged the jury, in substance, that the law calls for lamps that will cast a ray of light for one hundred sixty feet on the highway, and that there was some evidence that the lights on the defendant's automobile did not comply with the law. The judge then explained to the jury the difference between a cause and a condition, leaving it to them to decide whether the violation of the law with respect to lights, if there was one, had a causal connection with the accident. The defendant excepted to this portion of the charge on the ground that the subject of lights should not have been mentioned.

As stated above, the headlights on the defendant's automobile were on low beam and "showed on the car ahead." On low beam they would "pick up an object in the road about fifty or sixty feet ahead." There was no evidence to the contrary. The space between the defendant's automobile and the automobile in front of him was fifteen to twenty feet. There is no evidence that the defendant saw or could have seen the deceased prior to the time when he appeared within this space. For this distance lights that made objects visible for fifty to sixty feet were just as effective as those making them visible for one hundred.

sixty feet. The violation of the regulation as to lights, therefore, could have no materiality to any possible view of the evidence; if there was a violation it was a condition and not a cause. *Bartoszewicz* v. *Farashian,* 284 Mass. 200, 204, 205. *Kralik* v. *LeClair,* 315 Mass. 323. Negligence consisting in whole or in part of violation of law, like other negligence, is without legal consequence unless it is a contributing cause of the injury. *Baggs* v. *Hirschfield,* 293 Mass. 1, 3. *Dunsmoor* v. *Cowdrey,* 316 Mass. 516. The instructions of the judge permitted the jury to pass on an issue that never should have been submitted to them. We cannot properly say that this error was not harmful to the defendant.

We do not intimate that the evidence would have warranted a finding that the regulation in question had been violated or that the charge correctly stated the law with respect to it. It should be noted that the regulation does not require that a motor vehicle be equipped with lights that shall "make clearly visible . . . persons or substantial objects upon the roadway within a distance of 160. feet" under any and all circumstances, but requires such lights only if there is not sufficient light upon the roadway to make such persons or objects visible within that distance. The only evidence as to what the lighting conditions were at the place of the accident was that they were "not so good."

In view of the conclusion reached it becomes unnecessary to discuss the exceptions relating to evidence, since they involve questions that are not likely to arise on a retrial of the case.

*Exceptions sustained.*